**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**24-20399-CR-GAYLES/GOODMAN**
**CASE NO.:** _____

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 2
18 U.S.C. § 981(a)(1)(C)

FILED BY_____ *MP* ___D.C.

*Sep 12, 2024*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

**UNITED STATES OF AMERICA**

**v.**

**EFRAIN BETANCOURT, JR.,**

   **Defendant.**

_____ /

### INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Corporation

1.     Sky Group USA, LLC ("Sky Group") was a Florida limited liability company headquartered in Miami, Florida, and formed in March 2015.  Sky Group was licensed with the State of Florida as a sales finance company and was purportedly in the business of making small-dollar, short-term loans to consumer borrowers with poor or no credit (also known as "payday loans").  Sky Group offered promissory notes to investors to purportedly fund the payday loans to borrowers.

### The Defendant

2.     Defendant **EFRAIN BETANCOURT, JR**. resided in Miami, Florida, and was the Chief Executive Officer, managing member and sole owner of Sky Group.  **BETANCOURT** ran

Sky Group and also sold promissory notes to Sky Group investors.

## Definitions

3.     A "promissory note" is a financial instrument that contains a written promise by one party to pay another party a definite sum of money, either on demand or at a specified future date. A promissory note contains key terms pertaining to the debt and obligation, such as the principal amount, interest rate, maturity date, place of issuance, and issuer's signature.

4.     A *"Ponzi"* or *"Ponzi* scheme" is an investment fraud scheme that involves the payment of claimed returns to existing investors from funds contributed by new investors. *Ponzi* scheme organizers often solicit new investors by promising to invest funds in opportunities claimed to generate high returns with little or no risk.  In many *Ponzi* schemes, the participants focus on attracting new money to make promised payments to earlier-stage investors to create the false appearance that investors are profiting from a legitimate business.  *Ponzi* schemes require a consistent flow of money from new investors to continue and tend to collapse when it becomes difficult to recruit new investors or when a large number of investors ask for their money back.

## COUNT 1
## CONSPIRACY TO COMMIT MAIL AND WIRE FRAUD
## (18 U.S.C. § 1349)

1.     The General Allegations section of this Indictment is realleged and fully incorporated herein by reference.

2.     From in or around January 2016, through in or around March 2020, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

## EFRAIN BETANCOURT, JR.,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to:

2

(a)      knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private and commercial interstate carrier, according to the directions thereon, in violation of Title 18, United States Code, Section 1341; and

(b)      knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted in interstate commerce by means of wire communication, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.      It was the purpose of the conspiracy for the defendant and his co-conspirators to unjustly enrich themselves by misappropriating investor money for their personal use and benefit, by making materially false and fraudulent representations, and by concealing and failing to state material facts concerning, among other things, the profitability and safety of investing in Sky Group through the purchase and sale of promissory notes.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      **EFRAIN BETANCOURT, JR.** incorporated Sky Group in the State of Florida. **BETANCOURT** and his co-conspirators claimed that Sky Group was in the business of funding small-dollar, short-term loans to consumer borrowers.  They claimed that these loans, also known as payday loans, would be made to borrowers with poor or no credit.  Sky Group's business model was purportedly based on charging borrowers interest and fees on these short-term loans.

5.      **EFRAIN BETANCOURT, JR.** opened and maintained and caused others to open bank accounts in the name of Sky Group at financial institutions located in Miami-Dade County, Florida.  During his offer and sale of Sky Group promissory notes, at least one financial institution would not allow **BETANCOURT** to open a payday lending account.  Using false pretenses, **BETANCOURT** had one of his co-conspirators open several bank accounts to further Sky Group's operation. **BETANCOURT** controlled at least seven separate bank accounts linked to Sky Group.

6.      **EFRAIN BETANCOURT, JR.** hired a network of over fifty outside sales agents responsible for initially contacting and making pitches to potential investors for the sale of Sky Group promissory notes.  These sales agents contacted potential investors, and solicited, offered, and sold Sky Group promissory notes to investors located in South Florida, throughout the United States, as well as potential investors located outside of the United States. The sales agents met with investors or talked to them over the telephone, and stressed the monthly interest payments investors would earn as a key feature of the investment.  They also stressed the purported safety of the Sky Group promissory notes.

7.      Once an investor showed interest in Sky Group's promissory notes, the sales agent often referred the potential investor to **EFRAIN BETANCOURT, JR.** so that he could "close" the deal. **BETANCOURT** met personally with numerous investors to close the deal, or spoke with them on the telephone or by email.  In meetings at Sky Group's offices, **BETANCOURT**

4

described Sky Group's payday loan business and showed investors the company's website and a telemarketing office where company representatives purportedly solicited loan customers.

8.    Sky Group investors signed a "Loan Agreement and Promissory Note" with Sky Group in which investors agreed to provide Sky Group funds in return for monthly interest payments and the return of principal after one year. The principal amount of each promissory note generally ranged from $10,000 to $150,000, but went as high as $1.1 million. The annual interest rate was normally 48 percent, but ranged from as low as 24 percent to as high as 120 percent.

9.    **EFRAIN BETANCOURT, JR.**, his sales agents, and their co-conspirators directed investors to make payments for Sky Group's promissory notes by transferring funds electronically via interstate wires to bank accounts in Miami-Dade County, Florida. From no later than January 2016 through at least March 2020, Sky Group raised approximately $66 million from over 600 investors through the offer and sale of the promissory notes. Many of the investors resided in South Florida, where news of the investment spread by word-of-mouth. In fact, **BETANCOURT** pitched the investment in Sky Group as a great opportunity for members of the local Venezuelan immigrant community to generate investment income. But the investor group was not limited to Venezuelan-Americans or South Floridians, as investors came from at least eighteen U.S. states and territories and nineteen additional countries.

10.    **EFRAIN BETANCOURT, JR.** falsely and fraudulently represented that Sky Group had a $70 million loan portfolio generated by the payday lending operation, and that as a result Sky Group was profitable and had reserves to make interest payments on the promissory notes. Therefore, he falsely and fraudulently represented to numerous investors that their investment would be safe. **BETANCOURT** also emphasized the monthly interest payments

5

investors would receive as an important reason to invest in Sky Group.

11.     **EFRAIN BETANCOURT, JR.** often made false statements to investors regarding the use of investor funds.  For example, he falsely and fraudulently asserted to investors, both orally and in writing, that investor proceeds would be used to fund Sky Group payday loans.  In fact, the Sky Group promissory notes expressly stated that Sky Group:

> agree[d] that the funds to be received and governed by [the Notes] are to be used for the sole purpose of **portfolio financing** and associated cost by Sky Group USA LLC and any of its partner or affiliate corporations.  The principal balance shall not be used for payment to members or any other expense that are not related to the portfolio financing of the corporation.

12.     Although the Sky Group promissory notes stated that Sky Group would use investor proceeds solely to make consumer loans or for costs associated with the loans, **EFRAIN BETANCOURT, JR**. used investor funds for a variety of other purposes.  Of the approximately $66 million raised from investors, Sky Group made only approximately $12.2 million in consumer loans, and received only approximately $20.5 million in loan repayments.  **BETANCOURT** used $12 million in investor funds on operating expenses, and another $9.8 million to pay undisclosed sales agent commissions. In addition, **BETANCOURT** misappropriated over $7.5 million for personal use, including a luxury chateau wedding in France, expensive jewelry, a Miami condominium, and family vacations.

13.     To further his fraud scheme and create the illusion of success, **EFRAIN BETANCOURT, JR**. also paid prior investors "promissory note payments" with new investors' money.  The vast majority of these promissory note payments derived from new investor money. Thus, **BETANCOURT** operated a *Ponzi* scheme, generating revenue primarily through new investor money and using the newly raised money to make scheduled debt payments to previous investors. **BETANCOURT** used at least $19.2 million of later investor funds to repay earlier

investors' principal and interest.

14.     To induce investors to provide money to Sky Group, **EFRAIN BETANCOURT, JR.**, his co-conspirators, and sales agents made and caused others to make numerous materially false and fraudulent statements to investors, and concealed and omitted to state, and caused others to conceal and omit to state, material facts to investors, including, among other things, the following:

### **Materially False Statements**

(a)     that investor promissory note proceeds would only be used to fund consumer loans;

(b)     that the Sky Group promissory notes were a safe investment, secured, and guaranteed; and

(c)     that Sky Group's business was successful and profitable;

### **Concealment and Omission of Material Facts**

(d)     that **BETANCOURT** used approximately 35% of investor proceeds to pay himself, his family, his co-conspirators, and agents undisclosed excessive salaries, fees, commissions and other monetary distributions;

(e)     that new investor money was used to pay prior investor debt; and

(f)     that Sky Group was on the verge of complete financial failure and was unsuccessful and unprofitable.

All in violation of Title 18, United States Code, Section 1349.

### **COUNTS 2-7**
### **WIRE FRAUD**
### **(18 U.S.C. § 1343)**

1.     The General Allegations section of this Indictment is re-alleged and fully incorporated herein by reference.

2.     From in or around January 2016, through in or around March 2020, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

**EFRAIN BETANCOURT, JR.,**

did knowingly, and with intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that they were false and fraudulent when made, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.     It was the purpose of the scheme and artifice for the defendant and his accomplices to unjustly enrich themselves by misappropriating investor money for their personal use and benefit, by making materially false and fraudulent representations, and by concealing and failing to state material facts concerning, among other things, the profitability and safety of investing in Sky Group through the purchase and sale of promissory notes.

## THE SCHEME AND ARTIFICE

Paragraphs 4 through 14 of the Manner and Means section of Count 1 of the Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## USE OF THE WIRES

4.     On or about the dates specified as to each count below, **EFRAIN BETANCOURT, JR.**, as specified in each count below, for the purpose of executing and in furtherance of the

8

aforesaid scheme and artifice, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds:

| Count | Approximate Date | Description of Wire |
|-------|-----------------|---------------------|
| 2 | September 13, 2019 | Interstate wire transfer of approximately $250,000 from J.R.V.'s Bank of America, N.A. bank account to SKY GROUP's Wells Fargo NA bank account ending in 4234. |
| 3 | October 10, 2019 | Interstate wire transfer of approximately $20,000 from S.N.'s Citibank N.A. bank account to SKY GROUP's Wells Fargo NA bank account ending in 4234. |
| 4 | October 11, 2019 | Interstate wire transfer of approximately $50,000 from A.B.'s JPMorgan Chase Bank, N.A. account to SKY GROUP's Wells Fargo NA bank account ending in 4234. |
| 5 | October 18, 2019 | Bank of America, N.A. check deposit of $30,000 from N.G. into SKY GROUP's Wells Fargo NA bank account ending in 4234. |
| 6 | November 18, 2019 | Interstate wire transfer of approximately $250,000 from E.C.'s JPMorgan Chase Bank, N.A. bank account to SKY GROUP's Wells Fargo NA bank account ending in 4234. |
| 7 | November 19, 2019 | Interstate wire transfer of approximately $250,000 from E.C.'s JPMorgan Chase Bank, N.A. bank account to SKY GROUP's Wells Fargo NA bank account ending in 4234. |

In violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE
### (18 U.S.C. § 981(a)(1)(C))

1.     The allegations of this Indictment are hereby re-alleged, and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant, **EFRAIN BETANCOURT, JR.**, has an interest.

2.     Upon conviction of a violation of, or conspiracy to violate, Title 18, United States Code, Sections 1341 and/or 1343, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

9

3.      If any of the property subject to forfeiture, as a result of any act or omission of the

defendant:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be divided without difficulty.

the United States shall be entitled to the forfeiture of substitute property under the provisions of

Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set

forth at Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code,

Section 2461(c).

A TRUE BILL

███████████████████████

FOREPERSON

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
ROGER CRUZ
ASSISTANT UNITED STATES ATTORNEY

10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

v.

EFRAIN BETANCOURT JR.,

_____/
                    Defendant.

CASE NO.: 24-20399-CR-GAYLES/GOODMAN

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
☒ Miami    ☐ Key West    ☐ FTP
☐ FTL      ☐ WPB

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3.  Interpreter: (Yes or No) No__
    List language and/or dialect: _____

4.  This case will take __6__ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                    (Check only one)
    I    ☐ 0 to 5 days                  ☐ Petty
    II   ☒ 6 to 10 days                 ☐ Minor
    III  ☐ 11 to 20 days                ☐ Misdemeanor
    IV   ☐ 21 to 60 days                ☒ Felony
    V    ☐ 61 days and over

6.  Has this case been previously filed in this District Court? (Yes or No) No__
    If yes, Judge _____ Case No. _____
7.  Has a complaint been filed in this matter? (Yes or No) No__
    If yes, Magistrate Case No. _____
8.  Does this case relate to a previously filed matter in this District Court? (Yes or No) No__
    If yes, Judge _____ Case No. _____
9.  Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No__
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No__
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No__
15. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No__
16. Did this matter involve the participation of or consultation with now Magistrate Judge Marta Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No__

By: _____  For

Roger Cruz
Assistant United States Attorney
FL Bar No.        157971

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** __EFRAIN BETANCOURT JR.__

**Case No:** _____

Count #: 1

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349
* **Max. Term of Imprisonment: Twenty (20) years**
* **Mandatory Min. Term of Imprisonment (if applicable): No**
* **Max. Supervised Release: Three (3) Years**
* **Max. Fine: $250,000 or twice pecuniary gain or gross loss**

Count #: 2-7

Wire Fraud

Title 18, United States Code, Section 1343
* **Max. Term of Imprisonment: Twenty (20) years**
* **Mandatory Min. Term of Imprisonment (if applicable): No**
* **Max. Supervised Release: Three (3) Years**
* **Max. Fine: $250,000 or twice pecuniary gain or gross loss**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**