UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20399-GAYLES

UNITED STATES OF AMERICA

v.

EFRAIN BETANCOURT, JR.,

    Defendant.

## PRELIMINARY ORDER OF FORFEITURE

**THIS MATTER** is before the Court upon motion of the United States of America (the "United States") for entry of a Preliminary Order of Forfeiture [ECF No. 46] ("Motion") against Defendant Efrain Betancourt, Jr. (the "Defendant"). The Court has considered the Motion, is otherwise advised in the premises, and finds as follows:

On September 12, 2024, a federal grand jury returned an Indictment charging the Defendant in Count 1 with conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1349, among other counts. [ECF No. 3]. The Indictment also contained forfeiture allegations, which alleged that upon conviction of a violation of 18 U.S.C. § 1349, the Defendant shall forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to such violation. *See id.* at 9.

On May 21, 2025, the Court accepted the Defendant's guilty plea to Count 1 of the Indictment. *See* [ECF Nos. 40, 42]. As part of the guilty plea, the Defendant agreed to the entry of a forfeiture money judgment in the amount of $8,300,000. [ECF No. 42 at ¶13]. In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. *See* [ECF No. 41]. The Factual Proffer also provided

a basis for the forfeiture of property. *See id.* The United States Probation Office has since conducted a presentence investigation, which included information on the Defendant's financial condition. *See* [ECF No. 45].

As set forth in the Factual Proffer, [ECF No. 41], the Defendant was the Chief Executive Officer, managing member, and sole owner of Sky Group USA, LLC, which was purportedly in the business of making payday loans. *Id.* at 1. From in or around January 2016 through in or around March 2020, the Defendant willfully conspired with others to commit mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349. *Id.* It was the purpose of the conspiracy for the Defendant and co-conspirators to unjustly enrich themselves by misappropriating investor money for their personal use and benefit by making materially false and fraudulent representations, and concealing and failing to state material facts concerning, among other things, the profitability and safety of investing in Sky Group through the purchase and sale of promissory notes. *Id.* Sky Group's business model was purportedly based on charging interest and fees on payday loans. *Id.* at 2. The Defendant opened and maintained and caused others to open bank accounts in the name of Sky Group. *Id.* Sometime in 2016, the Defendant hired a network of over 30 outside sales agents, many of whom were also investors, responsible for initially contacting and making sales pitches to potential investors for the sale of Sky Group promissory notes. *Id.*

The Defendant met personally with numerous investors to close the deal. *Id.* In meetings at Sky Group's offices, the Defendant described Sky Group's payday loan business and showed investors the company's website and a telemarketing office where company representatives purportedly solicited loan customers. *Id.* Sky Group investors signed a "Loan Agreement and Promissory Note" with Sky Group in which investors agreed to provide Sky Group funds in return for monthly interest payments and the return of principal after one year. *Id.* The principal amount

of each promissory note generally ranged from $10,000 to $150,000, but went as high as $1.1 million. *Id.*

The Defendant and his sales agents, and their co-conspirators directed investors to make payments for Sky Group's promissory notes by transferring funds electronically via interstate wires to bank accounts in Miami. *Id.* at 3. From no later than January 2016 through at least March 2020, Sky Group raised approximately $66 million from over 600 investors through the offer and sale of promissory notes. *Id.* The Defendant often made false statements to investors regarding the use of investor funds. *Id.* For example, he asserted that investor proceeds would be used to fund Sky Group paydays loans. *Id.* In fact, the Sky Group promissory notes expressly stated that Sky Group:

> agree[d] that the funds to be received and governed by [the Notes] are to be used for the sole purpose of **portfolio financing** and associated cost by Sky Group USA LLC and any of its partner or affiliate corporations. The principal balance shall not be used for payment to members or any other expense that are not related to the portfolio financing of the corporation.

*Id.*

Although the Sky Group promissory notes stated that Sky Group would use investor proceeds solely to make consumer loans or for costs associated with the loans, the Defendant used investor funds for a variety of other purposes. *Id.* Of the approximately $66 million raised from investors, Sky Group made only about $12.2 million of consumer loans, and the Defendant used $12 million in investor funds on operating expenses, and another $9.8 million to pay undisclosed sales agent commissions. *Id.* In addition, the Defendant misappropriated $6.5 million for personal use. *Id.* His personal use included a luxury chateau wedding in France, expensive jewelry, a condominium, and family vacations. *See* [ECF No. 45 at ¶ 35]. In total, the Defendant obtained more than approximately $8.3 million in proceeds. [ECF No. 41 at 3].

To further his fraud scheme and create the illusion of success, the Defendant also paid prior investors "promissory note payments" with new investors' money. *Id.* For the majority of times, there was no source of funds, other than new investor money. *Id.* Thus, the Defendant operated a *Ponzi* scheme, generating revenue primarily through new investor money and using the newly raised money to make scheduled payments to previous investors. *Id.*

Accordingly, based on the foregoing, the evidence in the record, and for good cause shown, the Motion is **GRANTED**, and it is hereby **ORDERED** that:

1. Pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, and Rule 32.2 of the Federal Rules of Criminal Procedure, a forfeiture money judgment in the amount of $8,300,000 is hereby entered against the Defendant.

2. The United States is authorized to conduct any discovery that might be necessary to identify, locate, or dispose of forfeited property, and to resolve any third-party petition, pursuant to Rule 32.2(b)(3), (c)(1)(B) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m).

3. Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order is final as to the Defendant.

4. The Court shall retain jurisdiction in this matter for the purpose of enforcing this Order, and pursuant to Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure, shall amend this Order, or enter other orders as necessary, to forfeit additional specific property when identified.

**DONE AND ORDERED** in Miami, Florida, this 30th day of July 2025.

_____
**DARRIN P. GAYLES**
**UNITED STATES DISTRICT JUDGE**